# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

SANDRA ROLLINS,

            Plaintiff,

            v.

MIDDLE SMITHFIELD
TOWNSHIP,

            Defendant.

CIVIL ACTION NO. 3:23-CV-00864

(SAPORITO, J.)

## MEMORANDUM

The plaintiff has filed an expedited motion for emergency injunctive relief. (Doc. 38). The defendant has filed its brief in opposition. (Doc. 41). For the reasons set forth herein, we will deny the plaintiff's motion.

## I.    Background[1]

We must first briefly offer some background information concerning the case before the Court of Common Pleas of Monroe County pertinent to the plaintiff's motion for injunctive relief. In that case, Middle Smithfield Township has filed a petition for contempt of court against Ms. Rollins, stemming from Ms. Robinson's alleged refusal to clean up junk

---

[1] The facts are taken from Middle Smithfield Township's complaint in its action before the Court of Common Pleas of Monroe County. (Doc. 38-2).

from her property throughout the past decade. Middle Smithfield Township alleges that over the last decade, Ms. Rollins has brought miscellaneous vehicles and personal property onto her property for storage, consisting of "an increasingly large and conspicuous amount of unsightly junk" that has drawn numerous complaints from her neighbors. (*Id.*, ¶¶ 9,10). Middle Smithfield Township has alleged that the plaintiff has failed to remove the junk from her property despite numerous orders over a span of ten years mandating that she do so.[2] For this reason, on March 28, 2023, Middle Smithfield Township filed a motion for contempt and to compel compliance against Ms. Rollins. On July 26, 2023, the Court of Common Pleas of Monroe County held a hearing on the petition and issued an order, which granted the Township permission to enter the plaintiff's property and dispose of the items identified in the petition and the 2021 court order. Middle Smithfield Township has since filed an additional petition for contempt against Ms. Rollins on December 18, 2024, a hearing on which is currently scheduled

---

[2] *See, e.g.,* (Doc. 38-2, ¶ 22) ("[The court] found that Rollins had been in violation of the zoning ordinance since July 3, 2019, because Rollins had not removed the specified junk items from her property as required by the enforcement notice.").

for February 18, 2025, in the Court of Common Pleas of Monroe County. Here, the plaintiff moves for emergency injunctive relief five days before the hearing.

## II.    Legal Standard

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances. *See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994). Moreover, issuance of such relief is at the discretion of the trial judge. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chamberlain*, 145 F. Supp. 2d 621, 625 (M.D. Pa. 2001). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors: "(1) likelihood of success on the merits; (2) irreparable harm resulting from a denial of the relief; (3) the harm to the non-moving party if relief is granted; and (4) the public interest." *United States v. Bell*, 238 F. Supp. 2d 696, 699 (M.D. Pa. 2003); *see also Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994) ("The standards for a temporary restraining order are the same as those for a preliminary injunction."). It is the moving party who bears the burden of satisfying these factors. *Bell*, 238 F. Supp. 2d at 699; *Dole*, 604 F. Supp. at 512. "Only

if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief should the injunction issue." *Opticians Ass'n of America. v. Indep. Opticians of America,* 920 F.2d 187, 192 (3d Cir. 1990).

## III.  Discussion

The plaintiff has moved for emergency injunctive relief in this Court, seeking an emergency stay of any and all proceedings in the Court of Common Pleas of Monroe County pending resolution of the plaintiff's actions for violations of her civil rights in the underlying action. (Doc. 38, ¶ 7). Moreover, she requests that court order the defendant and its agents to refrain from trespassing upon the property at issue in the underlying action and from contacting the plaintiff. (*Id.* at 4). In her motion for injunctive relief, the plaintiff argues the necessary likelihood of success on the merits, likelihood of irreparable harm, balance of equities and hardship in her favor, and favorable public interest required in such a motion. *See Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019) ("When evaluating a motion for preliminary injunctive relief, a court considers four factors: (1) has the moving party established a reasonable likelihood of success on the merits (which need not be more

likely than not); (2) is the movant more likely than not to suffer irreparable harm in the absence of preliminary relief; (3) does the balance of equities tip in its favor; and (4) is an injunction in the public interest?"). Nonetheless, due to the nature of the plaintiff's request, we must abstain from exercising jurisdiction over this motion as it would interfere with an ongoing state proceeding. We must therefore deny the plaintiff's motion.

The Supreme Court has often held that federal courts have a strict duty to exercise jurisdiction that is conferred upon them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *see e.g., Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 821 (1976) ("[F]ederal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them'") (citations omitted); *England v. Louisiana Bd. of Medical Examiners*, 375 U.S. 411, 415 (1964) ("'When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction'") (quoting *Wilcox v. Consolidated Gas Co.*, 212 U.S. 19, 40 (1909)). However, the Supreme Court has additionally held that this duty is not absolute. *See Canada Malting Co. v. Paterson S.S., Ltd.*, 285 U.S. 413, 422 (1932) ("[T]he proposition that a court having jurisdiction must exercise it, is not

universally true."). The Supreme Court has found that federal courts may decline to exercise their jurisdiction in "exceptional circumstances." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959). The *Younger* abstention doctrine represents one of these limited exceptions, stressing the importance of "permit[ting] state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971).

While *Younger* originally "concerned the need for a federal court to abstain where hearing a case would interfere with a criminal proceeding," *RP Wynstone, LP v. New Hanover Twp.,* No. CV 24-959, 2024 WL 5204182, at *8 (E.D. Pa. Dec. 23, 2024), the Supreme Court "has extended the doctrine to particular state civil proceedings … that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 69–70 (internal citations omitted); *see also Altice USA, Inc. v. New Jersey Bd. of Pub. Utilities,* 26 F.4th 571, 576 (3d Cir. 2022) (quoting *Sprint*, 571 U.S. at 78) ("F]ederal courts must refrain from interfering with three types of state proceedings: (1) 'state criminal prosecutions,' (2) 'civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders …

uniquely in furtherance of the state courts' ability to perform their judicial functions.'"). This interest includes a "State's [important] interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it." *Juidice v. Vail*, 430 U.S. 327, 335 (1997).

The Supreme Court explained that the *Younger* doctrine of nonintervention lay in:

> [T]he notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601 (1975) (quoting *Younger*, 401 U.S. at 44). In *Juidice*, the Supreme Court Stated that the "contempt power lies at the core of the administration of a State's judicial system." *Juidice*, 430 U.S. at 335. It further elaborated that:

> Such interference with the contempt process not only unduly interfere(s) with the legitimate activities of the Stat(e), but also can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles.

*Id.* (citations omitted).

Here, the plaintiff requests emergency injunctive relief consisting of an emergency stay of any and all proceedings concerning her case in the Court of Common Pleas of Monroe County. (Doc. 38, ¶ 8). The plaintiff's underlying action in the Court of Common Pleas of Monroe County deals with contempt proceedings. As we noted before, the Supreme Court has specifically dictated that federal courts must abstain from these types of proceedings to avoid interference with the function of the State. Therefore, the principles which underlie *Younger* call for denial of the motion. *Juidice*, 430 U.S. at 337.

## IV.    Conclusion

In light of this analysis, we will deny the plaintiff's request for emergency injunctive relief.

An appropriate order follows.

Dated: February 14, 2025              *s/Joseph F. Saporito, Jr.*
                                                     JOSEPH F. SAPORITO, JR.
                                                     United States District Judge